UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY WYNES,

    Plaintiff,

v.

CITY OF ROYAL OAK and MICHAEL PARAMO,

    Defendants.

                                          /

Case No. 2:16-cv-12656

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR A PROTECTIVE ORDER [14] AND EXTENDING DISCOVERY**

Plaintiff Jeffrey Wynes brings this section 1983 action against police officer Michael Paramo and Paramo's current employer, the City of Royal Oak. Wynes served Royal Oak, as well some of Paramo's previous employers, with subpoenas for production of documents related to Wynes. Defendant Royal Oak objects to providing the requested documents and filed the instant motion. For the reasons below, the Court will grant the motion in part and deny it in part.

## BACKGROUND

The case arises out of Wynes's arrest on Halloween night 2015. Wynes alleges that Michael Paramo, a police officer for the City of Royal Oak, mistreated him in making the arrest. Six of the seven counts in Wynes's complaint are solely against Paramo. One of the counts is against Royal Oak and claims that the City "knew, or should have known, of Defendant Paramo's propensity to violate the rights of individuals in the manner alleged" because "[p]rior to the date of this incident Defendant Paramo had been sued in his capacity as police officer on at least one prior occasion for allegations including excessive

force, false arrest, false imprisonment, assault and battery, and intentional infliction of emotional distress, in Oakland County Circuit Court[.]" ECF 1, ¶¶ 46–47. Wynes alleges that Royal Oak failed to properly screen its police officers. *Id.* at ¶ 51.

The instant motion concerns Wynes's subpoenas, which command Paramo's former employers—the City of Pontiac, the City of Sylvan Lake, and Washtenaw County—to produce personnel files concerning Paramo. The files are to include "all citizen complaints" made against Paramo and "all materials pertaining to any discipline imposed" against him. Subpoenas, ECF 14-2, 14-3, 14-4. The Pontiac subpoena additionally seeks "a copy of any settlement agreement in *Ortiz v. City of Pontiac*, et al.," the case mentioned in the complaint and in which Paramo had allegedly been sued. ECF 14-2, PgID 79.

Defendants now move for a protective order to prevent the release of personnel files and the settlement agreement on the grounds that they are privileged and irrelevant.

## LEGAL STANDARD

In general, the scope of discovery is broad, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Materials that would not admissible at trial may nevertheless be discoverable under Federal Rule of Civil Procedure 26(b) if they are "reasonably calculated to lead to the discovery of admissible evidence." *Id.* But discovery is not boundless; the Court may limit or regulate the disclosure of materials "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Accordingly, the Court may quash or modify a subpoena under certain circumstances. *See* Fed. R. Civ. P. 45(d)(3).

## DISCUSSION

I.  Relevance

To begin, Defendants argue that the material sought is not relevant. Wynes alleges that Royal Oak inadequately screened, trained, and supervised its officers, including Paramo. He argues that Royal Oak "may be held liable if it knew about Defendant Paramo's prior instances of misconduct and . . . nonetheless hired him" or if it failed to uncover such instances due to an inadequate screening process. Resp., ECF 17, PgID 102. But Defendants argue that the personnel files of the other municipalities are irrelevant to what Royal Oak knew or did in its own hiring and training of Paramo.

The Court disagrees. When Royal Oak hired Paramo, it hired a career police officer. Paramo had worked for three other municipalities before joining the ranks of Royal Oak's police force. It stands to reason that Royal Oak, like many other employers, may have reached out to Paramo's former employers to check references or otherwise inquire about him. If Paramo left a trail of misdeeds behind him, the particulars of those deeds—and the ease of their discovery—is relevant to the claim against Royal Oak. Thus, what matters is not just "what Royal Oak knew upon hiring him," Mot., ECF 14, PgID 75, but what Royal Oak *should* have known through appropriate diligence. Paramo's personnel files are therefore relevant.

The settlement agreement, on the other hand, is not. Generally, a settlement agreement is inadmissible to "either to prove or disprove the validity or amount of a disputed claim," yet may be admissible "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408. An inadmissible agreement may nevertheless be discoverable, however, if the party seeking it makes a showing that his request is "reasonably calculated to lead to admissible evidence." *Doe v. Aramark Educ.*

3

*Res., Inc.*, 206 F.R.D. 459, 461 (M.D. Tenn. 2002). The Court finds that the information contained in the settlement agreement would not tend to make a fact of consequence more or less probable, and further finds that Wynes has not shown that his pursuit of the agreement is reasonably calculated to lead to admissible evidence. The agreement is therefore not discoverable.

II.     Right to Privacy

Notwithstanding the relevancy of Paramo's personnel files, Defendants argue that the release of Paramo's personnel records "could pose a serious threat of harm if it were to fall into the wrong hands," and therefore the disclosure of the information violates Paramo's right to privacy under the Fourteenth Amendment. Resp., ECF 14, PgID 71. Defendants offer *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) in support of the argument.

In *Kallstrom*, the plaintiffs were undercover police officers who testified in a large-scale prosecution of a violent gang's drug conspiracy. After the City released the officers' personnel files to both an advocacy organization and to the attorney of one of the defendants, the officers brought suit under § 1983, and claimed that the City violated their right to privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment. The Court reaffirmed its prior holding that "not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension," *id.*, but concluded that the officers had "a fundamental constitutional interest in preventing the release of personal information contained in their personnel files where such disclosure creates a substantial risk of serious bodily harm[.]" *Id.* at 1064. The court further emphasized that the seriousness of the risk is critical, because it is "the magnitude of the liberty deprivation

4

[that] strips the very essence of personhood" and implicates the Due Process Clause. *Id.* at 1064 (quoting *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 506–07 (6th Cir. 1996)).

Also, the *Kallstrom* court specifically held that the "disclosure of the officers' addresses, phone numbers, and driver's licenses, as well as the names, addresses, and phone numbers of their family members" created the substantial risk. *Id.* at 1069. But the information at issue here is more circumscribed. Wynes has already "offered to enter into a stipulated order with Defendants' counsel to allow for the redaction of Defendant Paramo's private personal identifying information including his social security number, driver's license number, home address, phone number, as well as the personal information of his family members." Resp., ECF 17, PgID 105 n.3. He has also "offered to stipulate to not publically disclose any of Defendant Paramo's personal identifying information." *Id.* Paramo's personnel files, so limited, are distinct from the sensitive material discussed in *Kallstrom*.

The Court notes Defendants' concern that Wynes's counsel also represents another person, in a criminal matter, who was arrested during the same encounter at issue in this case. Defendants worry that, as in *Kallstrom*, the information might "fall into the wrong hands." Reply, ECF 19, PgID 131. But unlike in *Kallstrom*, the Court has the advantage of looking prospectively at the possibility of mishandled information, and the above-mentioned redactions do much to curb any safety risks associated with counsel's dual representation. Though likely not necessary, the Court will also instruct and warn Plaintiff's counsel that any improper use of the materials will earn swift and serious sanctions. Reasonable

5

safeguards, achieved through the Court's orders, and good-faith negotiations, should be more than sufficient to protect the materials that will be disclosed.

Because Defendants have not shown that the limited disclosure of redacted versions of the personnel files would pose a substantial risk of serious bodily harm, Paramo cannot prevent the disclosure on due-process grounds.

III.  Executive/Deliberative Process Privilege

Defendants also assert an executive or deliberative process privilege. They argue that the personnel files produced by municipalities' police departments are intragovernmental documents. Defendants assert that the privilege applies both to Royal Oak's files and those of the non-party municipalities.

The deliberative process privilege is quite limited. Its purpose is to promote "'the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)). It therefore protects "advisory materials which truly reflect the deliberative or policymaking processes of an agency, but would not protect purely factual, investigative material." *Perry v. City of Pontiac*, No. 07-14036, 2011 WL 4345239, at *6 (E.D. Mich. Sept. 16, 2011) (quoting *Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 940 (6th Cir.1988)) (internal quotation marks and alterations omitted). Thus, communications unrelated to a decisional process, or made after the decision, are not privileged. *See Sears*, 421 U.S. at 151–52. And given its purpose, it follows that the privilege belongs to the agency seeking to safeguard its internal debates — not persons or organizations implicated in the discussions.

For all these reasons, the deliberative process privilege has little applicability to the personnel files Wynes seeks. And, to the extent the personnel files held by Pontiac, Sylvan Lake, and Washtenaw County implicate decisional deliberations, the privilege to withhold the information belongs to those bodies, not Defendants. Thus, neither Defendant has standing to assert the privilege to quash the third-party subpoenas. *See United States v. Llanez-Garcia*, 735 F.3d 483, 498–99 (6th Cir. 2013). As for Royal Oak, it may only withhold information reflecting pre-decisional opinions, recommendations, or deliberations; it may not withhold factual, investigative materials or discussions occurring after the decision to which they relate.

Finally, tucked into Defendants' argument on deliberative process privilege is mention of a Michigan law forbidding the disclosure of involuntary statements made by law enforcement officers. *See* Mot., ECF 14, PgID 73. The law, however, contains an exception that permits law enforcement agencies to disclose the statements "for use in a civil action against the employing agency or the law enforcement officer." Mich. Comp. Laws § 15.395*.* The release of any statements is therefore permissible.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendants' Motion for a Protective Order [14] is **GRANTED IN PART** and **DENIED IN PART**. The subpoenaed parties shall **DISCLOSE** to Plaintiff the personnel files referred to in the subpoenas within **10 days** of this order, subject to the following limitations:

    (1) Defendant Paramo's social security number, driver's license number, home or other addresses, phone numbers, and email addresses shall be redacted.

(2) The names, ages or birth dates, social security numbers, driver's license numbers, home or other addresses, phone numbers, and email addresses of Paramo's family members shall be redacted.

(3) The City of Pontiac, the City of Sylvan Lake, and the County of Washtenaw may redact or withhold the portions of the personnel files which are "deliberative" as discussed and defined in this Opinion.

**IT IS FURTHER ORDERED** that the portion of the Pontiac subpoena is **QUASHED** as to its command concerning the settlement agreement. The City of Pontiac need not disclose that information.

**IT IS FURTHER ORDERED** that the discovery cut-off date is **EXTENDED** to **June 2, 2017**.

**SO ORDERED**.

        s/Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated: May 22, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 22, 2017, by electronic and/or ordinary mail.

        s/David P. Parker
        Case Manager